UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EFRAIN HERNANDEZ | : | CIVIL NO. 3:03CV620 (RNC) |
| v. | : | |
| JOHN J. ARMSTRONG, ET AL., | : | November 30, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed.R.Civ.P. 56, the defendants move for summary judgment, and oppose the plaintiff's motion for summary judgment. In support of this motion, it is respectfully submitted that the undisputed material facts establish that the claims of plaintiff Efrain Hernandez are without merit. For the reasons that follow, the plaintiff's motion for summary judgment should be denied and judgment should enter in favor of the defendants.

**I. FACTUAL BACKGROUND**

The plaintiff, Efrain Hernandez, is an inmate who, since 1992, has been incarcerated in a Connecticut correctional facility. The defendants are: John Armstrong (the former Commissioner of the Connecticut Department of Correction) and Correctional Lieutenants Talo, Carnes and Rochefort. All defendants are sued in their individual and official capacities.

On July 30, 1995, the plaintiff, while incarcerated at the Corrigan Correctional Institution, assaulted and stabbed another inmate with a sharpened metal object approximately 6 inches in length.[1] In addition, plaintiff stabbed and slashed "anyone who was around" him at

---

[1] Specific citations to the evidence supporting these undisputed material facts appear in the defendants' Local Rule 56(c)(1) statement filed herewith.

the time of the assault. According to the reports written by witnesses and intervening staff after the incident, the plaintiff admitted to stabbing "several inmates" that evening. As a result, the plaintiff was subjected to institutional disciplinary proceedings and prosecuted for a number of offenses, including Assault in the Second and Third Degrees and Possession of a Weapon in a Correctional Institution. The plaintiff plead guilty under the Alford Doctrine to dispose of the criminal charges, and was sentenced to 4 years of incarceration to be served consecutively to a prior murder sentence. With respect to the institutional charges, a disciplinary was held on August 10, 1995, at the conclusion of which the plaintiff received 30 days of punitive segregation, forfeited 150 days of "good time" and lost 15 days of recreation.

In April 1996, the plaintiff filed a habeas corpus action in Connecticut Superior Court challenging the institutional disciplinary process. Specifically, the plaintiff claimed that he did not receive a copy of the original disciplinary report within the time prescribed by Department of Correction guidelines, that he was not properly interviewed regarding the charges, that he was not allowed to choose his advocate to represent him in a subsequent disciplinary hearing, and that, because the original disciplinary report was lost, a subsequent report submitted by defendant Carnes was procedurally infirm. According to the plaintiff's allegations in his habeas action, all of these shortcomings violated the Department of Correction's guidelines governing imposition of discipline.

After considerable court delay, the Department of Correction, through counsel, offered to resolve the plaintiff's habeas action by providing the plaintiff with a new hearing on the institutional charges. A second hearing was held on January 9, 2003, and resulted in dismissal of the institutional charges. Critically, at this second hearing, the plaintiff again admitted to the

assault, but claimed his institutional charges should be dismissed because of procedural infirmities. In dismissing the charges eight years after the incident, the hearing officer based his finding on "contradictory documents, no record of [the original] hearing, no record of investigation, [passage of] time since incident [and] witnesses unavailable.[2]" This action followed.

## II.  ARGUMENT

### A.  Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. §56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See also, Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985) (per curiam). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986) *cert denied* 480 U.S. 932, 107 S.Ct. 1570 (1987). The party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. §56(e).

---

[2] As a result of the disposition of the rehearing of the institutional charges, the habeas court dismissed the plaintiff's habeas as moot.

In discussing the history and propriety of summary judgment motions, the Supreme Court has explained:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1 ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

A party is not permitted to create his own "genuine" issue of fact simply by presenting contradictory or unsupported statements. *See Securities and Exchange Commission v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978). Thus, "[w]here the record could not lead a rational trier of facts to find for the nonmoving party, there is then no 'genuine issue for trial.'" *Clements v. County of Nassau*, 835 F.2d 1000, 1004 (2d Cir. 1987). The record in this case, even when considered in a light most favorable to the plaintiff, fully supports the granting of summary judgment in favor of the defendants.

### B.  The Plaintiff Cannot Show A Violation of His Fourteenth Amendment Rights

Although the plaintiff does not cite to a specific constitutional right, it is clear that claims challenging the imposition of prison disciplinary proceedings are analyzed according to the prodecural due process rights secured by the Fourteenth Amendment. Wolff v. McDonnell, 418 U.S. 539 (1974).

In considering the disciplinary proceedings at issue in this case, the Court must be mindful that an inmate's interest in retaining good time credits must be balanced with the

immediate needs of the correctional system in maintaining safety, security, order and discipline, and must be understood in the context of the "distinctive setting of a prison, where disciplinary proceedings take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

In balancing the interest of security, order, safety and maintaining discipline, with the prisoner's interest in retaining good time credits, the Supreme Court has held that due process is satisfied if "some evidence" exists to support the decision by prison officials to revoke good time credits. Superintendent v. Hill, ("Hill") at 455; Wolff, 418 U.S. at 562-563.  These cases also make clear that a subsequent judicial proceeding challenging the disciplinary process is not to "second guess" the experienced judgment of the disciplinary hearing officer: "In determining whether a decision of a prison disciplinary board had some evidence, courts are not required to examine the entire record, make an independent assessment of the credibility of witnesses or weigh the evidence." Hill, 472 U.S at 455; Williams v. Bass, 63 F.3d 483, 486 (6th Cir 1995); Demasi, 1998 Conn Super LEXIS 80, *3; Jolley v. Commissioner of Correction, 60 Conn App. 560, 760 A.2d 146 (2000).  Indeed, "the claim must be rejected if there was at least 'some evidence' to support the decision." Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir. 2001).

Clearly, in this case the original guilty finding, resulting in loss of good time and other lesser sanctions, is supported by "some evidence" and even if the court concludes that the evidence is rather thin or even meager, the court is not warranted in setting aside the decisions of prison administrators.  Indeed, the plaintiff could have been found guilty based on his own admission of guilt, the initial written statements of the officers involved in the incident, and later,

the plaintiff's Alford plea.  Ignoring this compelling evidence, the plaintiff now seeks to take advantage of the eight-year passage of time between the original disciplinary ticket and the resolution of his state habeas action, and asks the court to ignore all evidence other than the remarks of the second hearing officer.  There is no law to support such a claim.  Accordingly, the plaintiff's motion for summary judgment should be denied and judgment should enter in favor of the defendants.

As required by the Department of Correction administrative directives and constitutional guidelines, the plaintiff was provided with advanced written notice of the charge against him, in advance of his hearing, the opportunity to have an advocate, an opportunity to call witnesses, and a written summary of the evidence relied upon at his hearing.  See disciplinary reports attached to the plaintiff's complaint, and attached as Ex. 1 to the defendants Rule 56(c)(1) statement.  The standards for due process at a prison disciplinary hearing have been set forth by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  The Wolff court held that due process requires at least the following: (1) advance written notice of the claimed violation at least 24 hours in advance of the hearing; (2) written statement of the fact-finder as evidence relied upon at the hearing and the reasons for the disciplinary action taken; and (3) that the inmate be permitted to call witnesses and present evidence in his defense when it will not be unduly hazardous to institutional safety or correctional goals.  Even the right to call witnesses is a limited one. A careful reading of Wolff reveals that the inmate's request for witnesses only extends to consenting inmate witnesses who are relevant, non-redundant and who do not unduly present a hazard to security and order. Wolff 418 U.S at 566.

Similarly, in Baxter v. Palmigiano, 425 U.S. 308 (1976), the Supreme Court expressly rejected the notion that other procedural steps, such as confrontation and cross examination in prison disciplinary proceedings, are constitutionally required, stating:

> We made no such suggestion with respect to confrontation and cross-examination which, as was there pointed out, stand on a different footing because of their inherent danger and the availability of adequate bases of decision without them. See 418 U.S., at 567-568.

The Second Circuit Court of Appeals has similarly held, following Supreme Court precedent from Wolff, that "the extent to which prisoners may confront and cross examine witnesses should be left to the sound discretion of prison officials and administrators." Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986) cert. denied 485 U.S. 982 (1988) citing Baxter, 425 U.S. at 321-322; Wolff, 418 at 568-69.

Here, the plaintiff has not produced any evidence to substantiate his claim that he desired, or was prejudiced by the failure, to call witnesses or produce any evidence in opposition to his original disciplinary ticket. There are no written requests, objections or the like submitted by the plaintiff, nor is there even an affidavit submitted in support of his claims. Reliance on his complaint is patently insufficient for the plaintiff to prevail on his motion.

In Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985), the Supreme Court stated that:

> the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced ...."

The Court went on the find that

> [a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence in the record, which could support the conclusion reached by the disciplinary board.

Id.

The Supreme Court in Hill specifically declined to adopt a more stringent evidentiary standard as a constitutional requirement, noting that a prison is a highly charged atmosphere and prison officials must often act swiftly.  Id.  The Court concluded that "the fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact".  Id.  "**Revocation of good time credits is not comparable to a criminal conviction** and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than 'some evidence' applies in this context". Id.  (emphasis added).

With this in mind, there is no "constitutional" right to any of the procedures alleged by the plaintiff to have been violated.  Specifically, there is no requirement that petitioner have an attorney present to assist him, or to confront witnesses or cross examine. Here petitioner's tickets were all based on eyewitness statements of the prison staff, and were corroborated by the plaintiff's own admission of guilt.  Petitioner was afforded all of the constitutional protections set forth by Wolff and Superintendent v. Hill, supra.

The Disciplinary Hearing Officer based his findings in this matter upon evidence which clearly met the evidentiary standard required by Hill.  The hearing officer's decision with regard to the original report was based upon the information presented in the written report as well as

8

the plaintiff himself. It appears that the petitioner has brought this claim because now some ten years later, he is dissatisfied with the fact that he was given disciplinary reports and was found guilty. It was not a due process violation for the hearing officer at the original hearing to weigh the evidence presented at that hearing and conclude as he did.

### C. Alternatively, The Failure to Follow Violations of State Agency Procedures Do Not Rise To The Level of Due Process Violations

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that written prison directives are "primarily designed to guide correctional officials in the administration of a prison." Sandin, at 481-482. The Sandin Court expressly emphasized that, "**such regulations are not designed to confer rights on inmates.**" (emphasis added). Id at 482. The petitioner's claim of procedural due process violations in this case is based, in part, on claimed violations of Administrative Directives. For example, petitioner claims that the failure to include a disciplinary report number on a report is a due process failure. Such minor technicalities do not rise to the level of a constitutional violation.

In light of the Supreme Court's decision in Sandin, the plaintiff must show the following to prevail on his procedural due process claim: (1) that he enjoyed a protected liberty interest, and (2) that deprivation of that interest occurred without due process of law. See Taylor v. Rodriguez, 238 F.3d 188, 191 (2d Cir. 2001). See McCarthy v. Commissioner of Correction, 213 Conn. 289 (1989), citing to Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

As a result of the United States Supreme Court's decision in Sandin v. Connor, satisfaction of the first prong -- demonstration of a protected liberty interest -- "also requires a

9

two-part analysis." Tellier v. Fields, 230 F.3d 502, 511 (2d Cir. 2000). Thus, a prisoner suing under §1983 for denial of due process at a prison disciplinary hearing **must establish both** that the disciplinary confinement constituted "an atypical and significant hardship" in relation to the ordinary incidents of prison life **and** that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (quoting Sandin v. Conner, 515 U.S. 472, 484, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995)). (emphasis supplied).

    A disciplinary sanction does not meet the Sandin "atypical and significant hardship" standard unless it is "onerous." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the Sandin standard, see id., the Second Circuit has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. See Colon v. Howard, 215 F.3d 227, 231-32 (2d Cir. 2000) (discussing Sealey v. Giltner, 197 F.3d 578, 589-90 (2d Cir. 1999), in which confinement of 101 days was held not to have met Sandin standard). Judge Newman has indicated a preference for establishing a rule that confinement in normal SHU conditions for more than 180 days meets the Sandin standard. See Colon v. Howard, 215 F.3d 227, 232 (2d Cir. 2000) (SHU confinement for 305 days sufficient departure from ordinary incidents of prison life to require due process procedures).

    Here, the plaintiff's claim is significantly tempered by the fact that he pled guilty, albeit under the Alford Doctrine, to the criminal charges arising from the incident that also resulted in the imposition of prison disciplinary sanctions. In effect, the plaintiff's argument asks the

court to disregard the fact that he possessed a weapon in a correctional facility, used that weapon to stab others, and received a lengthy sentence as a result of those acts. For the court to disregard the consequences that flow from the plaintiff's crimes would be tantamount to requiring the defendants to pretend these acts never occurred, and therefore should not be considered in assessing and classifying the plaintiff's risk of dangerousness to the prison population. The plaintiff may wish to forget what happened in July 1995, but to require the defendants, and the Department of Correction, to do so would simply be dangerous and contrary to any interpretation of the due process clause of the fourteenth amendment.

### III.  CONCLUSION

For the foregoing reasons, it is clear that the plaintiff is not entitled to judgment as a matter of law. Indeed, based upon the undisputed material facts, as considered in light of applicable case law, the defendants are entitled to a summary judgment.

DEFENDANTS
JOHN ARMSTRONG

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:  _____/s/_____
Terrence M. O'Neill
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct 10835
E-Mail:  terrence.oneill@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 30th day of November, 2005:

Efrain Hernandez, No. 155161
Radgowski CI
986 Norwich-New London Tpke
Uncasville, CT 06080

                                      _____/s/_____
                                      Terrence M. O'Neill
                                      Assistant Attorney General