EFRAIN HERNANDEZ                                    N°: 303CV620 (JNC)
    Plaintiff
Vs.
JOHN J. ARMSTRONG, ET AL.,
    Defendants                                      December 7, 2005

<u>Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment</u>

Your plaintiff, EFRAIN HERNANDEZ, hereby files this memorandum of law in opposition to the defendants' motion for summary judgment dated November 30, 2005. For the following reasons, said motion for summary judgment should be denied:

I. <u>BACKGROUND</u>

The defendants have conveniently omitted relevant facts in their intentionally misleading request for summary judgment. The facts of this case are as follows:

On July 30, 1999, your plaintiff was attacked by another inmate at Corrigan Correctional Institution and slashed repeatedly with a straight-razor shank. See Exhibit A. In an attempt to defend himself from the

attack and protect his person, your plaintiff brandished a weapon and stabbed his assailant in return. Your plaintiff ultimately received numerous lacerations requiring sutures about his face, neck, arm, hand, and midsection. He was transferred to Yale-New Haven Hospital and admitted for treatment. SEE Exhibit B.

From the outset, your plaintiff avowed and maintained that his actions in attacking his assailant were executed in self defense and were, accordingly, lawful. However, on July 30, 1995, your plaintiff was admitted to the punitive segregation unit at Corrigan Correctional Institution. Although your plaintiff retained a protected liberty interest in not being arbitrarily exposed to the physically restrictive and psychologically harsh conditions of the special management unit, DOC officials completely sidestepped Constitutional principles and so confined him indefinitely. Your plaintiff was deposited into the SMU with absolutely no due process, no disciplinary report, and completely devoid of notice or a reasonable opportunity to be heard. (Ultimately, he remained in SMU for 503 days).

This draconian treatment lasted for almost 2 weeks until, finally, on August 10, 1995, your plaintiff was issued a disciplinary report outlining his purported misconduct. However, only 3 hours after receipt of said report, he was brought in chains to a disciplinary hearing and compelled to face these charges, without

(2)

the assistance of an advocate, or the ability to confront percipient witnesses, or call evidentiary witnesses, or a reasonable opportunity to prepare a defense.

Your plaintiff was merely thrown into punitive segregation where he remained for some 2 weeks with no disciplinary report or written notice. Finally, when a disciplinary report was issued, your plaintiff was given a copy and, without even slight process, called to answer for the alleged misconduct some 3 hours later.

The Constitutional deficiencies triggered by the lack of Due Process in this case are manifest. Apparently cognizant of their culpability, DOC officials at the hearing presented your plaintiff with a Hobsan's choice: Either voluntarily enter a plea of guilty to all offenses charged (in order to obtain a transfer out of the facility and away from other gang members who sought to stab, assault, and kill your plaintiff — indeed, they had already tried) or face an outright dismissal of the disciplinary report and consequently face release back to general population (into the waiting hands of such inmates). Faced with this untenable choice, your plaintiff pleaded guilty to the report and subsequently challenged said conviction by way of Habeus Corpus and the instant Section 1983 action. Your plaintiff ultimately prevailed in his Habeus proceeding and a new hearing was held in which all

(3)

underlying charges of misconduct were dismissed.

Interesting enough are the actions of DOC officials in attempting to fraudulently conceal their unconstitutional conduct. Firstly, because your plaintiff languished in SMU for nearly 2 weeks without written notice of any charges, or a disciplinary report, DOC officials later claimed that they had "lost" the initial report and had somehow failed to appreciate its absence for the intervening weeks (while your plaintiff meanwhile languished in punitive confinement). Subsequently, DOC officials then requested that your plaintiff sign a document allegedly bearing the date of the belatedly-served disciplinary report, and when your plaintiff complied, DOC officials attempted to surreptitiously swap said report with a different one bearing an earlier date in an attempt to cover up their conduct. Lastly, as a legal resolution to your plaintiff's Habeus proceeding on these points, DOC officials agreed to hold a second disciplinary hearing DE NOVO. On January 2, 2003, a hearing was held to conclude "whether the inmate's due process rights were violated." See Exhibit C.

Pursuant to the investigation of said hearing, the appointed disciplinary hearing officer noted:

> "Inmate Hernandez claims at no time did he see an investigator or advocate, that his rights

(4)

were violated and he was forced to plead guilty to the DR # 9507191, that he never plead guilty to the second DR # 9508043 and in fact there was never a hearing held. He stated that although he admits to the assault, his rights were violated during the disciplinary process... This investigator could find no investigator's report related to the Disciplinary Report RCC9508043."

SEE Exhibit D. Accordingly, all charges related to said report were consequently dismissed by LT. Edward Ramsey, who cited "Numerous due process violations... contradictory documents... No record of hearing... No record of investigation." SEE Exhibit E. This, of course, comes after your plaintiff was forced to unduly endure weeks of punitive segregation, the harsh psychological conditions of the SHU program at Northern C.I. for 503 days, an extended release date (loss of earned good-time credits), isolation, loss of recreation, and a multitude of other punitive consequences. The damages incurred by your plaintiff as a direct result of the admitted Due Process violations in this case are extreme and immeasurable.

II. LAW AND ARGUMENT

A. ADEQUATE LIBERTY INTEREST

Prisoners have a constitutionally protected liberty interest under the Fourteenth Amendment not to be subjected to actions by prison officials that are outside the "sentence imposed" on the prisoner. See Sandin v. Connor, 115 S.Ct 2293, 2298 (1995)(citations omitted). Actions by prison officials that are outside the sentence imposed include only those actions that result in a "grievous loss" of liberty retained [by the prisoner] even after sentenced to terms of imprisonment." Id at 2298 (citations omitted). Attempts by prison officials to confine a prisoner in disciplinary segregation for more than 1 year involve Per Se liberty interests. See Jones v. Kelly, 937 F. Supp. 200, 203 (W.D.N.Y. 1996); Lee v. Coughlin, 902 F. Supp 424 (S.D.N.Y. 1995). The defendants have correctly argued in their memorandum that the prevailing legal standard in this circuit calls for a minimum of 101 days. "[T]he Second Circuit has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. See Colon v. Howard, 215 F.3d 227, 231-32 (2d cir 2000) (discussing Sealey v. Gilmer, 197 F.3d 578, 589-90 (2d cir 1999)." Defendants' Memorandum at 10. The defendants have further argued " Judge Newman has indicated a preference for establishing a rule that confinement in normal SHU conditions for more than 180 days meets the Sandin standard. See Colon v.

Howard, 215 F.3d 227, 232 (2d Cir. 2000)(SHU confinement for 305 days sufficient departure from ordinary incidents of prison life to require due process procedures)." Defendants' Memorandum at 10. In any event, it is fundamentally indisputable that, under existing constitutional principles, confinement in SHU for a period of 503 consecutive days is a deprivation sufficiently onerous to be entitled to procedural due process protections under the Fourteenth Amendment. Here, such is exactly the case.

B. PROCEDURAL DUE PROCESS

The Connecticut Department of Correction (DOC) has responded to the minimal due process requirements mandated under the Fourteenth Amendment by creating the Code of Penal Discipline. The Code provides for an elaborate hearing system that is applicable to internal disciplinary proceedings within the DOC. The Code of Penal Discipline can be found in DOC Administrative Directive 9.5.

The Code of Penal Discipline is used in a wide variety of situations, many of which — as here — involve protected liberty interests. If a liberty interest is involved and the hearing provided to an inmate by the DOC through its Code of Penal Discipline fails to satisfy minimal due process requirements, the aggrieved inmate can sue culpable DOC officials for money damages. See 42 U.S.C. 1983.

(7)

A multitude of due process protections required by the constitution have been codified under the Code of Penal Discipline. For example: written notice. An inmate must be provided written notice of the offense at least 24 hours prior to the commencement of the hearing. SEE DOC Admin. Dir. 9.5 (22). An inmate must also be given "[a] copy or listing of any physical evidence" that may be used against him at least 24 hours before the hearing. DOC Admin. Dir 9.5 (29)(E).

An inmate must also be given the option of having an "advocate" represent him at the hearing. If an inmate chooses to have an advocate, the advocate selected by the inmate must be notified "promptly". DOC Administrative Dir. 9.5 (22). The advocate must meet with the inmate at least 24 hours before the hearing and must "conduct a thorough investigation independently of the [DOC's] Investigator, assist the inmate in preparing a defense, and appear at and assist in making a presentation at a formal disciplinary hearing." DOC Admin. Dir. 9.5 (23).

An inmate must also be given an opportunity to identify any inmate or staff witnesses that he would like to have testify at the hearing. DOC Admin. Dir 9.5 (22). Any such witnesses must be made available at the hearing, unless they "pose [a] threat to an orderly disciplinary hearing or to personal safety." DOC Admin. Dir 9.5 (25); DOC Admin. Dir 9.5 (22).

Lastly, after the hearing, the Hearing Officer must

(8)

prepare a disciplinary process summary report, which "shall include the offense charged, the plea of the accused, the disposition of witnesses, a summary of witness testimony, the findings and the reasons for it, the sanction(s) imposed and the reasons for it." DOC Admin Dir 9.5 (34).

Such procedural requirements (the right to written notice at least 24 hours prior to the hearing, an opportunity to identify any potential witnesses, and the right to receive a written, post-hearing summary) are merely codifications of the constitutional requirements set forth by the U.S. Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974). It is therefore clear that such protections are minimally required incidental to a disciplinary incident whereby the accused inmate was ultimately convicted of the offense and suffered the loss of earned good-time credits and 503 days in SHU. Here, no such protections were accorded.

C. <u>PLAINTIFFS' INDISPUTABLE LEGAL CLAIMS</u>

Your undersigned plaintiff has stated 3 indisputable constitutional claims:

1. <u>INSUFFICIENT NOTICE</u>

In order for a disciplinary investigation

(9)

to pass constitutional muster, the inmate is clearly entitled to sufficient notice and an opportunity to be heard. The United States Supreme Court has defined adequate notice as written notice provided to the inmate at least 24 hours prior to the hearing. "We hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." WOLFF v. McDonnell, 418 U.S. 539. DOC Administrative Directives additionally provide for a mandatory period of at least 24 hours between the provision of written notice to the inmate and the disciplinary hearing. DOC Admin. Dir. 9.5 (29)(E). In this case, it is indisputed that, although your plaintiff was admitted to punitive segregation on July 30, 1995, the actual disciplinary report was written on August 10, 1995, provided to your plaintiff on August 10, 1995, and your plaintiff was compelled to face the disciplinary hearing on the same date, August 10, 1995. Thus, a period of less than 3 hours elapsed between the rendering of the disciplinary report and the actual disciplinary hearing. Because the acts and omissions of the defendants sharply violated the procedural due process requirements set forth by the Supreme Court in WOLFF, and the Connecticut Administrative Directives,

(10)

the defendants cannot escape constitutional liability.

### 2. INSUFFICIENT OPPORTUNITY to BE HEARD

The court in <u>WOLFF</u> mandated that inmates facing a disciplinary proceeding be minimally entitled to identify potential fact witnesses and request their testimony at the hearing. In this instance, DOC officials plainly denied your plaintiff such an opportunity.

Because your plaintiff was presented with the disciplinary report only 3 hours before the hearing, no investigation took place. Because no investigation took place, your plaintiff was not given an opportunity to identify potential exculpatory witnesses. Your plaintiff was merely served with the disciplinary report and was dragged off to the hearing 3 hours later. In particular, your plaintiff maintained from the outset that he acted in lawful self-defense during the assault. Exculpatory witnesses to support this proposition would have been of critical importance to the preservation of a constitutionally sufficient hearing. At minimum, your plaintiff was entitled to the opportunity to <u>identify</u> such witnesses, whether or not they were subsequently permitted to testify. When your plaintiff attempted to do such before the hearing officer, his efforts were sharply dismissed. The defendants cannot escape liability for such facts.

Furthermore, your plaintiff ultimately suffered

(11)

the consequence of 503 days in SHU. Because consequences so extreme and significant were imposed for the purported misconduct, the defendants had an inflexible obligation to provide your plaintiff with a constitutionally adequate opportunity to be heard. By failing to permit him to identify potential exculpatory witnesses and prepare an adequate defense, they did NOT. No amount of clever lawyerly arguendo can change that fact.

In addition, your plaintiff was denied the opportunity to be assisted at the hearing by an advocate. Again, because your plaintiff was issued the disciplinary report and compelled to attend a contemporaneous hearing, required procedural measures were deliberately overlooked. Nearly every essential requirement mandated in WOLFF — adequate notice, time to prepare, an opportunity to identify witnesses, an investigation of the facts, and the assistance of an advocate — was flagrantly disregarded. Your plaintiff ultimately suffered 503 torturous days in SHU; constitutional violations of this magnitude should be afforded the vitality and the accountability that they so rightly deserve. The defendants simply cannot escape constitutional liability for such blatant violations of WOLFF.

D. DEFENDANTS' ERRONEOUS STANDARDS

On page 6 of the defendants' memorandum, they incredulously assert that "the plaintiff was provided with

(12)

advanced written notice of the charge against him, in advance of the hearing, the opportunity to have an advocate, an opportunity to call witnesses, and a written summary of the evidence relied upon at his hearing." Defendants' Memorandum at 6. On page 7 of same memorandum, the defendants further assert that "nor is there even an affidavit submitted in support of his claims." Defendants' Memorandum at 7. Based upon the submissions set forth in this memorandum, said representations are false, deliberately misleading, and without merit. In addition, a comprehensive declaration was propounded by your plaintiff in support of his claims, executed pursuant to 28 U.S.C. 1746. See plaintiff's Motion for Summary Judgment dated August 15, 2005. The representations of the defendants in their memorandum are thus false and misleading.

    The defendants also appear to suggest that the entire disciplinary proceeding was constitutionally adequate because "some evidence" existed to support the conviction. See Defendants' Memorandum at 5. However, the "some evidence" rule enunciated in Superintendent v. Hill, 472 U.S. 455, 454 (1985) is entirely inapposite and does not apply to this fact pattern. Your plaintiff has challenged the procedural due process accorded to him by DOC officials at the disciplinary hearing, NOT the quantum of substantive due process relied upon to secure the conviction. A mountain of evidence — indeed, clear and convincing evidence — would be as patently insufficient to secure a lawful conviction through deficient procedural means as no evidence would be when challenged via flawless procedural means. In this case,

the gravamen is an egregiously flawed and constitutionally insufficient procedural process. The defendants are asking this court to overlook their gross constitutional torts because, after all, had they comported with the Constitution and afforded your plaintiff compulsory due process, "some evidence" would have existed to support the conviction. This outrageous argument should be rejected in short order.

Lastly, the defendants astoundingly assert that the consequences suffered by your plaintiff — 503 days in SHU — do not constitute an "atypical and significant hardship" under Sandin. See defendants' memorandum at 9, 10. Interestingly, on page 10 of that same memorandum, they correctly opine that a minimum of 101 days is required in the Second Circuit to satisfy the Sandin requirements, and that "Judge Newman has indicated a preference for establishing a rule that confinement in normal SHU conditions for more than 180 days meets the Sandin standard." Defendants memorandum at 10. In fact, your plaintiff suffered in SHU conditions at Northern Correctional Institution's Supermax SHU program from July 30, 1995, until December 16, 1996 — 503 consecutive days — as a direct consequence of the instant disciplinary conviction. It is therefore manifest that the defendants' arguments in this regard are non-colorable and without merit.

In order for a prisoner to prevail under 42 U.S.C. 1983 for denial of due process at a prison disciplinary hearing, he must satisfy a two-part analysis. Tellier v. Fields, 230 F.3d 502, 511 (2d Cir. 2000). First, the inmate must satisfy the "atypical

(14)

and significant hardship" test under <u>Sandin</u>. Here, your plaintiff has made that showing. Second, the inmate must demonstrate that the state has conferred a protected liberty interest, through its statutes or administrative directives, in remaining free from said confinement or restraint. <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317 (2d Cir 1996)(Quoting <u>Sandin v. Conner</u>, 515 US 472 (1995)). In this case the DOC has enacted clear and unambiguous Administrative Directives codifying several liberty interests proclaimed by the U.S. Supreme Court in <u>Wolff v. MacDonnell</u>, 418 U.S. 539 (1974). It is the violation of said directives upon which your plaintiff brings this action. Accordingly, judgment in favor of your plaintiff is appropriate.

## III. CONCLUSION.

Your plaintiff was locked in punitive segregation on July 30, 1995. No disciplinary report was issued to him until August 10, 1995. Three hours later, he was compelled to attend a disciplinary hearing to answer for the offenses charged in said disciplinary report. No investigation was conducted. Your plaintiff was not interviewed. Your plaintiff was denied an advocate. Your plaintiff was denied an opportunity to identify potentially exculpatory witnesses. Your plaintiff was threatened that if he enforced his constitutional rights, the disciplinary report would be dismissed and he would be returned to general population, and made available to gang members who avowed to beat, stab, and kill him. Ultimately, incidental to your plaintiff's coerced

(15)

Connecticut Department of Correction

| Facility | NHCC | Report date | 7-30-92 |
| --- | --- | --- | --- |
| Inmate name | Hernandez, Efran | Time | ☐ a.m.  ☒ p.m. |
| Staff name |  | I.D. number | 155161 |
| Incident report submitted | ☒ Yes  ☐ No   Number | Date | 7-30-92 |

Treatment location: MED. Unit

Injury description (must be completed if no other report):
States he was attacked while in shower c̄ a razor via another inmate. Received numerous lacerations on upper trunk and extremities. Injury to (R) hand from punching.

Diagnosis: Numerous lacerations on upper trunk + extremities. Most areas superficial, area on left arm requires suturing.
? Fx (R) Hand

Treatment administered: Lacerations areas cleansed + bandaged
?Fx

Followup required: Sent to YNHH ER
(R) hand to be X-rayed

Placement after treatment:

Observations/remarks:

CONFIDENTIAL INFORMATION
The confidentiality of this record is required under Chapter 899 of the Connecticut General Statutes. This material shall not be transmitted to anyone without written consent or other authorization as provided in the aforementioned statutes.

Patient signature: Unable to sign ℞ injured hand    Date 7-30-92
Medical staff signature: M. Miller RN    Date 7-30-92

23

guilty plea, he suffered 503 consecutive days in punitive segregation and a supermax SHU program. Subsequently, your plaintiff challenged the defendants' actions by way of Habeus Corpus and prevailed. As a result of said proceeding, the DOC investigated this matter, fully dismissed all charges, and admitted "numerous due process violations." Your plaintiff now seeks monetary compensation for the undue 503 days spent in solitary SHU confinement.

FOR THESE REASONS, the defendants' motion for summary judgment should be denied, and judgment should enter in favor of the plaintiff.

Your plaintiff has respectfully requested a TRIAL BY JUDGE in this matter, and hereby requests that this matter be docketed forthwith.

Respectfully submitted,

*Efrain Hernandez*
*Efrain Hernandez*

EFRAIN HERNANDEZ
Your Plaintiff
982 Norwich-New London Tpk.
Uncasville, CT 06382