UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EFRAIN HERNANDEZ,                    :
                                     :
        Plaintiff,                   :
                                     :
        v.                           :        CASE NO. 3:03CV620(DFM)
                                     :
JOHN ARMSTRONG, ET AL.,              :
                                     :
        Defendants.                  :


RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

        The plaintiff, Efrain Hernandez, a Connecticut inmate, brings
this civil rights action pro se against the former Commissioner of
the Connecticut Department of Correction John Armstrong and
correctional officers Carnes, Rochefort and Talo.[1]  The plaintiff
alleges that procedures employed at a disciplinary hearing were
constitutionally invalid and that the hearing officer and prison
officials violated his constitutional right to procedural due
process.  Pending before the court are the parties' cross-motions
for summary judgment.[2]  For the reasons that follow, the court
denies the plaintiff's motion for summary judgment (doc. #26) and
grants the defendants' motion for summary judgment. (Doc. #34.)

_____

        [1]The record does not contain these defendants' first names.
The defendants are sued in their individual and official
capacities.

        [2]Pursuant to 28 U.S.C. § 636, the parties consented to have a
magistrate judge conduct any or all further proceedings in the
case, including trial and entry of a final judgment  (Doc. #27.)
Chief Judge Chatigny referred to the case to the undersigned.
(Doc. #28.)

I.   Factual Background[3]

On July 30, 1995, while incarcerated at the Corrigan Correctional Institution, the plaintiff was in an altercation involving a knife. The institution charged him with assault. (Pl's Local Rule 56(a)(1) Statement ¶1 [admitted].) Lieutenant Pompi, not a party to this action, wrote a disciplinary report regarding the incident. (Answer ¶1.) The defendant Talo signed the area on the report indicating that the disciplinary report had been delivered to the plaintiff. The plaintiff, however, contends that he was not given this report. Immediately after the incident, the plaintiff was placed in segregation. On August 10, 1995, while in segregation, he was given a disciplinary report for the July 30, 1995 incident. The defendant Carnes signed this report.

On August 10, 1995, a disciplinary hearing regarding the July 30, 1995 incident was held at which the defendant Rochefort was the disciplinary hearing officer. The plaintiff pled guilty to the charge in the disciplinary report. (Answer ¶4.) He and defendant Rochefort signed the report. (Pl's Local Rule 56(a)(1) Statement ¶7 [admitted].) The plaintiff received as sanctions thirty days confinement in punitive segregation, loss of one hundred fifty days of good time[4] and loss of fifteen days of recreation. (Compl. at

---

[3]The facts are undisputed unless otherwise indicated.

[4]"Good time credit is a creation of legislative grace." Mitchell v. Commissioner of Correction, 94 Conn. App. 210, 2006 WL 559389, at *1 (Mar. 14, 2006). "The Commissioner by statute has

6.)[5]  Subsequently, he was charged with state criminal charges of assault in the second and third degrees and possession of a weapon in a correctional institution.  (Pl's ex. E.)  The plaintiff pled guilty to these charges pursuant to the <u>Alford</u> doctrine[6] and received a four year sentence to be served consecutive to his underlying sentence. (Pl's ex. E.)  The plaintiff is challenging his criminal conviction in state court.  (Pl's ex. K.)

After completing his time in segregation, the plaintiff was transferred to a different correctional facility, Northern Correctional Institution.  (Pl's Local Rule 56(a)(1) Statement ¶8 [admitted].)  In April 1996, he filed a petition for a writ of habeas corpus in Connecticut Superior Court claiming due process violations occurred in the August 10, 1995 disciplinary hearing. (Def's ex. 6.)  In response, a new disciplinary hearing on the institutional charges was held. (Def's ex. 5.)  At the new hearing on January 9, 2003, the hearing officer dismissed the institutional charge of assault because of procedural anomalies at the August 10, 1995 hearing.  (Pl's ex. D.)  The plaintiff's good time credits were restored.  (Compl. at 8.)  The bases for the hearing officer's

discretion whether to award so-called statutory good time . . . ." <u>Harris v. Meulemans</u>, 389 F. Supp. 2d 438, 442 (D. Conn. 2005). <u>See</u> Conn. Gen. Stat. § 18-7a.

[5]The citation is to the page of the complaint as the complaint does not contain separate, numbered averments. <u>See</u> Fed. R. Civ. P. 10(b).

[6]<u>See</u> <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).

3

decision to dismiss the charge were: "contradictory documents, no record of hearing, no record of investigation, time since incident and witnesses unavailable."  (Def's ex. 6.)  As a result of the rehearing, the state court dismissed as moot the plaintiff's habeas action in February 2003.  (Def's ex. 7.)

Thereafter, the plaintiff commenced this action pursuant to 42 U.S.C. § 1983 concerning alleged procedural due process violations that occurred in the August 10, 1995 hearing.  He claims, <u>inter alia</u>, that in violation of Department of Correction Administrative Directives he did not receive a copy of the original disciplinary report, was not given adequate time to prepare his defense, was not provided the opportunity to consult with an investigator or an advocate, and that defendant Rochefort "cut him off" and did not permit him to explain the incident or listen to his complaints about the process.[7]

## II.  <u>Legal Standard</u>

In a motion for summary judgment, the burden is on the moving

---

[7]In his opposition to the defendants' motion for summary judgment, the plaintiff appears to allege that the defendants are responsible for his subsequent placement in administrative segregation upon his transfer to Northern Correctional Institution ("Northern").  (Doc. #38 at 5.)  The court does not address this claim because his allegation regarding the conditions of his confinement at Northern is not plead in the complaint and did not enter the case until the plaintiff mentioned it in his opposition memoranda.  <u>See, e.g.</u>, <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998) (a party may not amend its complaint through statements made in motion papers); <u>IIT v. Cornfeld</u>, 619 F.2d 909, 914 n. 6 (2d Cir. 1980)(a party is not entitled to amend its complaint through statements made in motion papers).

party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248.  When the plaintiff proceeds <u>pro se</u>, the court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.  <u>See Weinstein v. Albright</u>, 261 F.3d 127, 132 (2d Cir. 2001).  Although a <u>pro se</u> plaintiff is entitled to special latitude, he must establish more than merely "metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Where, as here, "both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. . . . Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." <u>Morales v. Quintel Entertainment, Inc.</u>, 249 F.3d 115, 121 (2d Cir. 2001) (citations omitted).

III. <u>Discussion</u>

The plaintiff contends that he was denied procedural due process during the course of a disciplinary hearing which resulted in a penalty of thirty days in segregation, loss of fifteen days

recreation and loss of one hundred fifty days good time.  The defendants argue that the plaintiff was not deprived of a constitutionally cognizable liberty interest.  The court agrees with the defendants.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, ___ U.S. ___, 125 S. Ct. 2384, 2393 (2005).  The "Supreme Court has made clear that, with respect to a prisoner serving a sentence, not every aspect of restrictive confinement within a penal institution impairs a constitutionally protected liberty interest." Wright v. Smith, 21 F.3d 496, 498 (2d Cir. 1994).  See Sandin v. Hewitt, 515 U.S. 472, 478 (1995) ("[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner.")  To successfully state a claim under 42 U.S.C. § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  See Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000).

Pursuant to Sandin v. Hewitt, 515 U.S. 472, 484 (1995), the court "applies a two-part test to determine whether an inmate possesses a protected liberty interest." Bourguignon v. Lantz, No.

6

3:05CV245(SRU), 2006 WL 214009, at *7 (D. Conn. Jan. 25, 2006).
For a liberty interest to be protectable, the plaintiff must
establish both that the confinement or restraint creates an
"atypical[8] and significant hardship on the inmate in relation to
the ordinary incidents of prison life, Sandin, 515 U.S. at 484, and
that "the state has granted its inmates, by regulation or by
statute, a protected liberty interest in remaining free from that
confinement or restraint." Frazier v. Coughlin, 81 F.3d 313, 317
(2d Cir. 1996).  "A prisoner who satisfies both of these elements
would be entitled to the procedural due process protections
enunciated by Wolff v. McDonnell, 418 U.S. at 556-58, 94 S.Ct. at
2974-75, and its progeny." Jackson v. Johnson, 15 F. Supp. 2d 341,
357 (S.D.N.Y. 1998).

     "Although there is no bright-line rule regarding the length or
type of sanction that would give rise to an 'atypical and
significant hardship,' this standard will not be met unless the
disciplinary and administrative sanctions are onerous." Jenkins v.
Haubert, 179 F.3d 19, 28 (2d Cir. 1999).  In determining whether
prison conditions meet this standard, the court considers both the
conditions and their duration.  See Sealey v. Giltner, 197 F.3d
578, 586 (2d Cir. 1999).

     The plaintiff was subjected to thirty days punitive

---

     [8]"Atypicality in a Sandin inquiry normally presents a question
of law." Ciaprazi v. Goord, No. Civ. 9:02cv915, 2005 WL 3531464,
at *11 (N.D.N.Y. Dec. 22, 1995).

segregation and lost fifteen days of recreation.  He has not alleged facts suggesting that these sanctions were qualitatively different from ordinary prison life.  Decisions in the Second Circuit indicate that keeplock or segregated housing unit confinement of 30 days or less is not an "atypical or significant hardship" under Sandin.  See Williams v. Keane, No. 95 CIV. 0379, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases).  See, e.g., Sandin v. Hewitt, 515 U.S. 472, 485 (1995) (no liberty interest protecting against a 30-day assignment to segregated confinement); Nicholson v. Murphy, No. 3:02CV1815(MRK), 2003 WL 22909876, at *10-*11 (D. Conn. Sept. 17, 2003) (confinement in segregation for twenty-seven days is not an atypical and significant hardship); Rosario v. Selsky, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec. 28, 1995) (120 days confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison).  In light of the plaintiff's allegations and the relevant case law, the court concludes that the plaintiff's thirty-day confinement in segregation and loss of recreation are not an atypical and significant hardship and do not give rise to a liberty interest under Sandin.

As to the plaintiff's loss of 150 days of good time as a result of the hearing, it is true that "inmates have a liberty interest in good time credit they have already earned." Abed v.

8

<u>Armstrong</u>, 209 F.3d 63, 66-67 (2d Cir. 2000). However, the plaintiff, by his own admission, concedes that his good time was restored. "[W]here good time credits were reinstated by administrative appeal or subsequent state action, no liberty interest exists and no lawsuit can prevail. See <u>Laws v. Cleaver</u>, 140 F. Supp. 2d 145, 151-155 (D. Conn. 2001); <u>Walker v. Bates</u>, 23 F.3d 652 (2d Cir. 1994)." <u>Roston v. Selsky</u>, No. 00 CIV. 8994(HB), 2001 WL 1297797, at *3 (S.D.N.Y. Oct. 25, 2001).

The plaintiff has failed to establish the deprivation of a constitutionally cognizable liberty interest sufficient to trigger the Fourteenth Amendment's procedural due process requirements. Accordingly, because the plaintiff has not alleged the deprivation of a protected liberty interest, his due process claim fails.

IV. <u>Conclusion</u>

For these reasons, the plaintiff's motion for summary judgment (doc. #26) is denied and the defendant's motion for summary judgment (doc. #34) is granted. The Clerk is directed to enter judgment in favor of defendants and close this case.

SO ORDERED at Hartford, Connecticut this 23rd day of March, 2006.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge